UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRADITIONS SENIOR
MANAGEMENT, INC.,

    Plaintiff,

v.       Case No: 8:12-cv-2321-T-30MAP

UNITED HEALTH ADMINISTRATORS,
INC., d/b/a UNITED HEALTH PLUS,
GARDEN STATE HEALTHCARE
ADMINISTRATORS, INC., JOSEPH
SCHWARTZ, an individual, and
OXFORD COVERAGE, INC.,

    Defendants.
_____/

**ORDER**

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss the Amended Complaint, Dkt. #30, the Plaintiff's Complaint, Dkt. #26, and Plaintiff's Response to Defendant's Motion to Dismiss, Dkt. #33. After reviewing these filings, the Court concludes the motion to dismiss should be granted in part and denied in part.

**BACKGROUND**

Traditions Senior Management, Inc. (TSM) alleges that in 2009, its insurance broker and advisor, Joseph Schwartz (Schwartz), advised TSM to accept an arrangement by which "Schwartz and his affiliated companies" -- United Health Administrators, Inc. (UHP), Garden State Health Care Administrators, Inc. (Garden), and Oxford Coverage, Inc. (Oxford) -- would take the risk and benefit of TSM becoming

"self-insured." Dkt. #26, 3. "Schwartz and his affiliated companies" would collect premium payments and bear the risk of paying claims, even if the claims exceeded those premiums. Dkt . #26, 3-4. They would also keep premium payments in excess of covered claims. Dkt . #26, 3-4. TSM orally agreed to this arrangement, but no written contract was created. Dkt. #26, 3-4.

Under this plan, UHP was responsible for "processing and paying health benefits directly to the employees' health providers." Dkt. #26, 4. Garden received premiums and was responsible for proper distribution of employee health claims. Dkt. #26, 4. Oxford and Schwartz were "indemnifiers to pay covered health claims to the extent they exceeded the premiums paid by TSM." Dkt. #26, 4. Schwartz was also the president of Garden and Oxford. Dkt. #26, 3.

"TSM and the health facilities it managed paid premiums in excess of $4.7 million . . ." between September 2009 and August 2011. Dkt. #26, 4. UHP, Garden, and Oxford "were entrusted with [these] premiums . . . for the purpose of paying covered employee health insurance claims." Dkt. #26, 4. And TSM alleges that Schwartz "personally made the decisions regarding disbursement of the premiums." Dkt. #26, 7.

By the summer of 2011, "legitimate employee health claims were not being processed or paid." Dkt. #26, 5. "[A]t that time, the aggregate claims approached $1 million." Dkt. #26, 5. TSM demanded UHP, Garden, and Oxford process and pay the claims. Dkt. #26, 5. The companies initially agreed, but have since "failed and refused to do so without explanation." Dkt. #26, 5. Since that time, TSM claims to have paid "over $700,000 in employee health claims which were the responsibility of the Defendants." Dkt. #26, 5.

## **MOTION TO DISMISS STANDARD**

To warrant dismissal of a complaint, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama,* 30 F.3d 117, 120 (11th Cir.1994), citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. *Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir.2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir.1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

In *Bell Atlantic Corp. v. Twombly,* the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). *See Electrostim Med. Services, Inc. v. Lindsey,* 8:11-CV-2467-T-33TBM, 2012 WL 1560647 (M.D. Fla. 2012).

3

## Count I: Breach of Fiduciary Duty Against Schwartz

To establish a claim for breach of fiduciary duty, a plaintiff must plead the "existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). The most difficult part of this analysis is determining if a fiduciary duty actually exists. A fiduciary duty is formed when a party is "under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Doe v. Evans* 814 So.2d 370 (Fla. 2002) (citation omitted); *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So.2d 536, 540 (Fla. 5th DCA, 2003).  Likewise, ". . . a fiduciary relationship may be implied by law, and such relationships are 'premised upon the specific factual situation surrounding the transaction and the relationship of the parties.'" *Doe v. Evans* 814 So.2d 370, citing *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla. 3d DCA 1994).

As alleged in the complaint, Schwartz has a fiduciary duty to TSM in his capacity as an insurance broker and advisor. *Southtrust Bank and Right Equipment Co. of Pinellas County, Inc. v. Export Ins. Services, Inc.*, 190 F.Supp.2d 1304 (M.D. Fla., 2002) (holding that an insurance broker and advisor has a fiduciary duty to his client, because of the trust implicit in such a relationship).

In his advisory role, TSM claims it trusted and sought advice from Schwartz for seven years, and Schwartz was personally responsible for disbursing and handling $4 million paid by TSM for the benefit of its employees, thus creating a fiduciary duty. Dkt. #26, 3. TSM also claims Schwartz exploited this position of trust by "intentionally

4

diverting premiums paid by TSM to himself." Dkt. #26, 4-7. This claim establishes a sufficient factual basis for a breach of fiduciary duty and damages resulting from that breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Thus, these alleged facts establish a legally plausible claim of breach of fiduciary duty against Schwartz.

**Count II: Breach of Fiduciary Duty Against UHP, Garden, and Oxford**

In an "arms-length transaction," there is no duty to act for the benefit or protection of the other party. *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So.2d 540-542, citing (citation omitted), citing *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D.Fla.1991). A payment, series of payments, or a business relationship is not enough to create the trust and reliance necessary to form a fiduciary duty. *See Doe v. Evans* 814 So.2d 370; *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So.2d at 540-542; *Lanz v. Resolution Trust Corp.,* 764 F.Supp. at 176.

TSM alleges Schwartz is the president of Garden and Oxford and this subjects those companies to the same fiduciary duty owed by Schwartz. Dkt. #26. An insurance advisor certainly owes his client a fiduciary duty, but the president of a corporation does not owe a fiduciary duty to another corporation by virtue of being in business with them. *See Southtrust Bank and Right Equipment Co. of Pinellas County, Inc. v. Export Ins. Services, Inc.*, 190 F.Supp.2d at 1304. According to the facts alleged by TSM, Schwartz's position as the president of Garden and Oxford was distinct from his role as TSM's advisor. Said another way, Schwartz was not an agent of Garden and Oxford in his capacity as TSM's advisor. Dkt. #26. Thus, Oxford and Garden cannot owe TSM a fiduciary duty simply because their employee owes TSM a fiduciary duty in a capacity

5

outside of his employment. *See generally Doe v. Evans* 814 So.2d 370; *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So.2d 536.

The alleged fact that TSM paid UHP, Garden, and Oxford $4 million is insufficient, by itself, to establish a fiduciary relationship. *See Doe v. Evans* 814 So.2d 370; *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So.2d 540-542; *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176. This is no different than any ordinary business transaction and does not give rise to a heightened expectation of trust without a special relationship between the parties. *Id.*

Finally, TSM alleges that "Schwartz and his affiliated companies would act as trustee for premium payments . . ." and as third party administrators for TSM's premium payments and insurance scheme. Dkt. #26, 3. One who is entrusted with the management of another's money owes a fiduciary duty to that person. *See Doe v. Evans* 814 So.2d at 374 ("a fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation"); *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So.2d at 540 ("To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.").

TSM alleges the corporate Defendants breached their fiduciary duty as third party administrators by not paying out valid claims from TSM's money. Dkt. #26, 4-5, 8-9. TSM's allegations that the three corporate defendants acted as trustee for its premium payments states a plausible cause of action that a fiduciary relationship was created and that damages resulted from breach of that fiduciary duty. *See Taylor*

*Woodrow*, 850 So. 2d at 540 ("[a] fiduciary relationship which is implied in law is based on the specific factual circumstances surrounding the transaction and relationship of the parties") (quoting *First Nat'l Bank & Trust Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 415 (Fla. 4th DCA 2001))). Thus, TSM has alleged a legally plausible claim of breach of fiduciary duty against UHP, Garden, and Oxford as third party administrators of TSM's money.

### Count III: Unjust Enrichment Against All Defendants

To succeed on an unjust enrichment claim, a plaintiff "must show that (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it." *Tilton v. Playboy Entm't. Grp., Inc.*, 2007 WL 80858, 3 (M.D. Fla. 2007), citing *Tooltrend, Inc. v. CMT Utensil, SRL,* 198 F.3d 802, 805 (11th Cir. 1999). But, "where a plaintiff predicates their unjust enrichment claim on the wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment." *Tilton v. Playboy Entm't. Grp., Inc.*, 2007 WL 80858, 4; *State v. Tenet Health Care Corp.,* 420 F.Supp.2d 1288, 1309 (S.D.Fla. 2005).

TSM claims that it conferred a benefit in the form of premium payments to the defendants, and the defendants voluntarily accepted these payments under the false pretense of using them to pay insurance claims. Dkt. #26, 9-10. At first blush, these allegations seem to establish an unjust enrichment claim. *See Id.* But, TSM refers to the Defendants' as: "obfuscat[ing] and conceal[ing] material facts," "intentionally diverting

7

premiums paid by TSM . . . ," "intentionally leaving scarce the pot necessary to pay employee health claims," (Dkt. #26, 7) "failing to disclose . . . " their actions, (Dkt. #26, 9) and "purposefully retain[ing] [premiums] while ignoring and failing to pay employee health claims *as promised*" (Dkt. #26, 9). (emphasis added). These statements make it clear that TSM is predicating their unjust enrichment claim on the wrongful conduct of the Defendants. Thus, TSM's right to recovery rests in a contract or tort claim, and not unjust enrichment. *Tilton v. Playboy Entm't. Grp., Inc.*, 2007 WL 80858, 4; *State v. Tenet Health Care Corp.,* 420 F.Supp.2d at 1309. But, TSM may amend its complaint to plead unjust enrichment as an alternative to breach of fiduciary duty, thus avoiding this conflict.

### Count IV: Common Law Indemnity Against All Defendants

"Indemnity may arise either [sic] in contract or in tort; by an express or implied contract to indemnify; or by equitable concepts based on the tort theory of indemnity." *Humble Oil & Refining Co. v. Naquin*, 414 F.2d 912, 915 (5th Cir. 1969) citing *General Electric Company v. Cuban American Nickel Company*, 396 F.2d 89 (5th Cir., 1968). Common law indemnity claims based upon tort law arise almost exclusively from negligence actions, where an innocent party was sued as a result of another's negligence. *See Humble Oil & Refining Co. v. Naquin*, 414 F.2d 913; *Dade county School Bd. v. Radio Station WQBA*, 731 So.2d 638, 643 (Fla. 1999); *K-Mart Corp. v. Chairs, Inc.,* 506 So.2d 7, 9-10 (Fla. 5th DCA 1987).

To succeed on a common law indemnity claim, "the party seeking indemnification must be without fault, and its liability must be vicarious and solely for the wrong of another . . . who was at fault." *Dade County School Bd. v. Radio Station WQBA*, 731

8

So.2d at 642; *Federal Ins. Co. v. Western Waterproofing Co.,* 500 So.2d 162, 165 (Fla. 1st DCA 1986). "Fault" refers to legal fault that arises from a valid claim. *Id.* Finally, a "special relationship" must exist between the parties to warrant common law indemnification. *Dade county School Bd. v. Radio Station WQBA*, 731 So.2d at 642; *Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490, 493 (Fla.1979). This "special relationship" does not need to stem from a contractual agreement, although it can. *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 21 F.Supp 2d 593, 605 (E.D.La. 1998) (applying Florida law); *Larjim Management Corp. v. Capital Bank*, 554 So. 2d 587, 588 (Fla. 3d DCA, 1989).

TSM's claim for breach of fiduciary duty, even if meritorious, does not establish fault as it is meant in *Dade County School Board*. *Dade County School Bd. v. Radio Station WQBA*, 731 So.2d at 642; *Federal Ins. Co. v. Western Waterproofing Co.,* 500 So.2d at 165. Common law indemnity is an equitable remedy for innocent defendants in negligence suits; it is not a remedy for plaintiffs after business deals go bad. *See generally id.* Ordinarily, express or implied contractual indemnity would be the appropriate claim for a case resembling this one, but TSM has not brought a contract claim, thus a contractual indemnity claim is also inappropriate. *See Dade County School Bd. v. Radio Station WQBA*, 731 So.2d 38; *Humble Oil & Refining Co. v. Naquin*, 414 F.2d at 915.

### Count V: Equitable Accounting Against All Defendants

"Under Florida law, a party that seeks an equitable accounting must show that: 1) the parties share a fiduciary relationship or that the questioned transactions are complex, and 2) a remedy at law is inadequate." *Am. United Life Ins. Co. v. Martinez*,

9

480 F.3d 1043, 1071 (11th Cir. 2007), citing *Kee v. Nat'l Res. Ins. Co.,* 918 F.2d 1538, 1540 (11th Cir. 1990). The standard for determining fiduciary relationships has already been discussed, and the determination of whether a series of transactions is sufficiently complex to warrant equitable accounting is fact specific. *See Managed Care Solutions, Inc.,* 694 F. Supp. 2d 1275, 1281 (S.D. Fla. 2010); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1071. But, arguing that financial records are voluminous or in the "sole and exclusive possession" of the Defendant is insufficient to sustain a claim for equitable accounting. *Managed Care Solutions, Inc.,* 694 F. Supp. 2d 1282.

Likewise, the finances at issue must be "so difficult and complicated as to be beyond the ken of jury trial." *Managed Care Solutions, Inc.,* 694 F. Supp. 2d 1281, citing *Huebener v. Chinn,* 186 Or. 508, 207 P.2d at 1136 (1949). Finally, "[a] 'legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into [the defendant's] business records.'" *Managed Care Solutions, Inc.,* 694 F. Supp. 2d 1281, citing *Dairy Queen, Inc. v. Wood*, 369 U.S. at 478, 82 S.Ct. 894 (1962). Nevertheless, a trustee has "a strict duty to keep and render a complete and accurate record and accounting as to its trusteeship to the beneficiary." *Bravo v. Sauter*, 727 So.2d 1103, 1107 (Fla. 4th DCA 1999).

In the instant case, if the facts alleged by TSM are true, the Defendants owe TSM a fiduciary duty. *See Southtrust Bank and Right Equipment Co. of Pinellas County, Inc. v. Export Ins. Services, Inc.*, 190 F.Supp.2d at 1304. This satisfies the first requirement for equitable accounting, but TSM does not specify why the normal course of discovery would be inadequate in this case. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1071. Nevertheless, if the Defendants are trustees, then they have a duty to

disclose financial records that impact the beneficiary. *See Bravo v. Sauter*, 727 So.2d at 1107. Thus, the motion to dismiss this claim will be denied. The Defendants shall answer the claim, but an actual accounting may never be necessary.

It is therefore **ORDERED** AND **ADJUDGED** that:

1. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. #30) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

2. Defendants shall file an answer to the complaint within fourteen (14) days of the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on this 27th day of June, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2012\12-cv-2321.mtdismiss.docx